FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 21, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA P,[1]<br>           Plaintiff,<br><br>  vs.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2]<br>           Defendant. | No. 2:20-cv-00326-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 16, 17 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 16, 17.  The parties consented to proceed before a magistrate judge.  ECF No. 7.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 16, and denies Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

ORDER - 3

any other kind of substantial gainful work which exists in the national economy."
42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

ORDER - 4

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On April 20, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging an amended disability onset date of May 1, 2017.  Tr. 15, 89, 105, 215-223, 225-241.  The applications were denied initially and on reconsideration.  Tr. 144-147, 149-156. Plaintiff appeared before an administrative law judge (ALJ) on January 17, 2020. Tr. 35-73.  On January 31, 2020 the ALJ denied Plaintiff's claim.  Tr. 12-34.

ORDER - 6

At step one of the sequential evaluation process, the ALJ found Plaintiff, who meets the insured status requirements through December 31, 2022, has not engaged in substantial gainful activity since May 1, 2017, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: migraines, rheumatoid arthritis, cervical degenerative disc disease, and depression. Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift and/or carry twenty pounds occasionally and ten pounds frequently. [Plaintiff] can stand and/or walk for about six hours and sit for about six hours in an eight-hour workday with normal breaks. [Plaintiff] needs the option to sit/stand every thirty minutes for approximately five minutes while remaining at the workstation. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally climb ramps/stairs. [Plaintiff] can frequently stoop, and occasionally crouch, kneel, and crawl. [Plaintiff] should avoid exposure to bright sunshine and/or flashing lights. [Plaintiff] can have occasional computer use. [Plaintiff] can perform low stress work, defined as no production pace work, sales quotas, or customer complaints as the primary job. [Plaintiff] can work in a job where concentration is not critical where critical is defined as careful, exact evaluation and judgement, and fine detailed work, such as a surgeon or a pilot.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that, considering Plaintiff's age,

ORDER - 7

education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as sales attendant/clerk, mail clerk, and house sitter.  Tr. 27-28.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of May 1, 2017, through the date of the decision.  Tr. 28.

On July 17, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 16 at 5.

ORDER - 8

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff faults the ALJ for discounting the medical opinion of Kelly Witte, PA-C. ECF No. 16 at 13-18.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"

(including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs

ORDER - 10

(c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3).

The parties disagree over whether Ninth Circuit case law continues to be

controlling in light of the amended regulations, specifically whether the "clear and

convincing" and "specific and legitimate" standards still apply.  ECF No. 16 at 13-

18; ECF No. 17 at 7-10.  "It remains to be seen whether the new regulations will

meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's

reasoning and whether the Ninth Circuit will continue to require that an ALJ

provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No.

EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

(W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer

to the new regulations, even where they conflict with prior judicial precedent,

unless the prior judicial construction 'follows from the unambiguous terms of the

statute and thus leaves no room for agency discretion.'"  *Gary T.,* 2020 WL

3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet

Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d

Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld

ORDER - 11

1 | unless 'they exceeded the Secretary's authority [or] are arbitrary and

2 | capricious.'").

3 |     There is not a consensus among the district courts as to whether the "clear

4 | and convincing" and "specific and legitimate" standards continue to apply.  *See,*

5 | *e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

6 | Nov. 10, 2020) (applying the specific and legitimate standard under the new

7 | regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.

8 | Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,

9 | 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new

10 | regulations displace the treating physician rule and the new regulations control);

11 | *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D.

12 | Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and

13 | legitimate nor clear and convincing standard).  For the sake of consistency in this

14 | District, the Court adopts the rationale and holding articulated on the issue in

15 | *Emilie K. v. Saul*, No. 2:20-cv-00079-SMJ, 2021 WL 864869, *3-4 (E.D. Wash.

16 | Mar. 8, 2021), *appeal docketed*, No. 21-35360 (9th Cir. May 10, 2021).  In *Emilie*

17 | *K.*, this Court held that the ALJ did not err in applying the new regulations over

18 | Ninth Circuit precedent, because the result did not contravene the Administrative

19 | Procedure Act's requirement that decisions include a statement of "findings and

20 | conclusions, and the reasons or basis therefor, on all the material issues of fact,

ORDER - 12

law, or discretion presented on the record." *Id.* at *4 (citing 5 U.S.C. § 557(c)(A)).

This rationale has been adopted in other cases with this Court. *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL 4071863, at *5 (E.D. Wash. Sept. 7, 2021). Nevertheless, it is not clear that the Court's analysis in this matter would differ in any significant respect under the specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

### 1. Ms. Witte

On January 29, 2018, Ms. Witte, Plaintiff's primary care provider, completed a physical functioning evaluation for DSHS.[3] Tr. 1164-68. Ms. Witte diagnosed Plaintiff with migraine (intractable), numbness of the face, and a gait disorder. Tr. 1165. She opined that Plaintiff's migraines caused severe limitations, defined as "inability to perform," in all basic work activities (sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, crouching, seeing, hearing and communicating); Plaintiff's numbness of the face caused severe limitations in her ability to perform seeing and hearing work activities; and Plaintiff's gait disorder caused severe limitations in her ability to sit,

---

[3] The ALJ refers to the medical source as Kelly White. *See, e.g.*, Tr. 19, 22-25. The administrative record indicates the source's name is Kelly Witte. *See, e.g.*, Tr. 1166.

ORDER - 13

stand, walk, lift, carry, handle, push, pull, reach, stoop and crouch.  *Id.*  Ms. Witte

further opined Plaintiff was unable to meet the demands of sedentary work in a

regular predictable manner.  Tr. 1166.  She noted Plaintiff would continue further

evaluation with Neurology including continued treatment of migraines with Botox

injections.  *Id.*

On December 17, 2019, Ms. Witte completed a physical medical source

statement and rendered an opinion on Plaintiff's functioning.  Tr. 1217-1220.  She

confirmed Plaintiff's diagnoses of intractable migraines, depression, facial

weakness, and rheumatoid arthritis, and she indicated Plaintiff's prognosis was

poor.  Tr. 1217.  She opined that Plaintiff could walk five blocks without rest or

pain; Plaintiff could sit for more than two hours at a time and could stand for 30

minutes at a time, for a total of four hours of standing/walking and six hours of

sitting per workday; due to severe migraines, Plaintiff would need to take frequent,

unscheduled breaks during a workday, lasting up to the whole day; Plaintiff could

frequently lift less than 10 pounds, occasionally lift 10 pounds, and rarely lift 20

pounds; Plaintiff could occasionally twist, stoop, crouch/squat, and climb

stairs/ladders; Plaintiff would be off task 25 percent or more of the time during a

typical workday; Plaintiff was incapable of even low stress work because it

exacerbated migraines; and that if Plaintiff tried to work full-time, she would likely

be absent more than four days per month.  Tr. 1217-20.  Ms. Witte further opined

that due to severe migraines, Plaintiff was at risk for driving and at high risk for

falls, and that she could not view computer screens more than 10 minutes without

exacerbation of migraines symptoms including weakness, pain, and difficulty

focusing.  *Id.*  The ALJ found Ms. Witte's opinions were not persuasive.  Tr. 25.

The ALJ gave only one reason to reject Ms. Witte's opinions, finding "they

are not consistent with the overall objective medical evidence."  Tr. 25.[4]

Consistency is one of the most important factors an ALJ must consider when

determining how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  The more consistent an opinion is with the evidence from other

sources, the more persuasive the opinion is.  20 C.F.R. §§ 404.1520c(c)(2),

416.920c(b)(2).  Here, despite referencing the "overall objective medical evidence"

_____

[4] Defendant argues the ALJ found that Ms. Witte's findings were not supported by

Witte's own examinations and not supported by the broader medical record, ECF

No. 17 at 2, 11 (citing Tr. 25), but this was not the finding made by the ALJ in

rejecting Ms. Witte's opinion.  Tr. 25.  As such, the Court will not consider the

*post hoc* rationalization.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The

Court will "review only the reasons provided by the ALJ in the disability

determination and may not affirm the ALJ on a ground upon which he did not

rely.").

ORDER - 15

the ALJ then only points to a few lines of treatment notes from an appointment

with Ms. Witte on November 22, 2019.  Tr. 25.  First, the ALJ notes Ms. Witte's

general finding that Plaintiff was "healthy appearing" and appeared in "no apparent

distress."  *Id.* (citing Tr. 1498).  Next, the ALJ lists some abnormal findings

including Ms. Witte's observation that Plaintiff "did have a slight droop on the left

side of her face, and her left shoulder was elevated compared with right, with

visible swelling of the left trapezius."  *Id.*  Finally, the ALJ lists few more normal

findings from the same physical exam, noting "[h]owever, otherwise she had no

cyanosis or edema.  Her motor strength and tone were normal.  She ambulated

normally.  *Id.*

In this brief paragraph rejecting Ms. Witte's opinions, the ALJ lists some

normal and abnormal findings from one appointment but fails to offer any analysis

or point to any inconsistencies between Ms. Witte's opinions and these findings.

However, the few abnormal findings the ALJ does cite are consistent with

Plaintiff's treatment records.  In fact, the record as a whole reveals Ms. Witte and

other providers consistently noted Plaintiff's report of left side symptoms in

relation to migraines, and that they observed facial droop along with other

neurological findings.  *See, e.g.*, Tr. 530-31 (tingling, speech changes,

photophobia, weakness); Tr. 544 (falls, "neurological issues that are limiting her

ability to work," dizziness, pain); Tr. 579-81 (nausea, photophobia, phonophobia,

"droopiness of the face," numbness "left face" and tingling "left face"); Tr. 591-92 (coordination impaired, Romberg sign positive, progressive neurological symptoms); Tr. 1487 (photophobia, tingling left side of face). While the ALJ provides some summary of various medical records throughout the decision, there is little to no analysis of the record as a whole, and the ALJ failed to reference relevant findings by Ms. Witte and other providers over years of office visits, many of which focus on Plaintiff's migraines. *See, e.g.*, Tr. 530-31, 570, 579-80, 581-82, 584-85, 587-88, 591-92, 594, 599, 633-37, 1487. Without some articulation of the inconsistencies between the evidence as a whole and the medical source opinions, the Court is unable to meaningfully review this proffered basis for evaluating the medical opinion.

In the rejection of Ms. Witte's opinions, the ALJ notes Plaintiff was "healthy appearing" and in "no apparent distress" at a physical exam. Tr. 25. Throughout the decision, the ALJ repeatedly notes Plaintiff appeared "in no acute distress" at various appointments to discredit Plaintiff's allegations of migraine symptoms, and then references the same finding again to reject Ms. Witte. Tr. 22, 24 (citing Tr. 1201, 1205, 1345, 1354, 1362, 1371, 1380, 1389, 1425, 1494). An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively

ORDER - 17

rely on some entries in plaintiff's records while ignoring others).  In fact, throughout the decision The ALJ lists the same string of cites to a general medical finding of "no acute distress" (often appearing in treatment notes with just the abbreviation "NAD") as one of only two objective findings representative of the "overall objective medical evidence" in regard to migraines. [5]  Tr. 22, 24, 25.

Defendant also lists these same cites as examples to bolster the ALJ's decision, noting the ALJ found that "in numerous exams, Plaintiff was in no acute distress, inconsistent with claims of constant migraine pain"; Defendant argues that Ms. Witte's opinion "seems completely inconsistent with regular treatment notes showing Plaintiff to be in no acute distress."  ECF No. 17 at 13, (citing Tr. 1201, 1205, 1345, 1354, 1362, 1371, 1380, 1389, 1425, 1494).  There is no analysis of the overall treatment notes, however, and the ALJ repeats the same string of ten cites twice in the decision to discredit Plaintiff's allegations.  Tr. 22, 24.

All but one of these appointments are focused on Plaintiff's numerous other medical issues, and the ALJ ignores findings relevant to migraines.  Two of the appointments are gynecology visits: one in 2018 where the provider noted Plaintiff's reports of neurological symptoms including dizziness and vertigo, and

---

[5] The other is Plaintiff's unremarkable brain MRI, which was not specifically referenced by the ALJ in rejecting Ms. Witte's opinion, and is addressed *infra*.

ORDER - 18

they "discussed HRT risks with her migraine h[istory]"; and the other is from 2019 where Plaintiff was noted to be experiencing a migraine and also "feeling poorly (malaise)," but the provider explained "she is doing well from a menopausal standpoint." Tr. 1201-02, 1203, 1205. Seven of the cites are to rheumatology chart notes (four of these appointments occurred prior to the alleged onset date, and the ALJ cites two of the others to the incorrect "F" section in the administrative record). Tr. 1345, 1354, 1362, 1371, 1380, 1389, 1425. Here, the "no acute distress" finding noted by the ALJ shows very little about the actual treatment record or appointment on that date. For example, at the August 15, 2017 rheumatology appointment, while the last page does include the "Gen: NAD" finding under physical exam, earlier pages of the visit reveal "she has been having migraines on and off almost every 3 days or so. She has been off work several weeks now" and that she "still has some left face numbness with drooling … sometimes she would have some speech issues … she sees her PCP on a regular basis for this." Tr. 1375, 1380.

The final cite in the ALJ's list is Plaintiff's December 17, 2019 visit with Ms. Witte. Tr. 1492-94. Although Ms. Witte did note Plaintiff's "level of distress: NAD," this is also the date she completed her medical source statement, discussed *supra*. Tr. 1217-20, 1494. Ms. Witte's opinion in the medical source statement is

ORDER - 19

consistent with her assessment/plan in treatment notes on the same date, where she explained:

> I do believe she is a candidate for SSI due to her migraines.  She has severe migraines 25/30 days per month and has failed multiple conservative therapies as well as specialized treatments by her neurologist.  Her prognosis is poor and she is not likely to have further improvement.

Tr. 1495.

In repeatedly citing a brief, generic chart note as one of the few reasons to reject Ms. Witte's opinions, the ALJ mischaracterized the record.  The longitudinal treatment record shows more mixed results, and by not analyzing relevant findings within the same treatment notes, the ALJ's characterization of the record is not supported by substantial evidence.[6]

_____

[6] Additionally, as noted recently in this District, "district courts have questioned the applicability of the generic chart note of 'acute distress' to chronic conditions such as Plaintiff's." *See Maria D. v. Saul*, NO: 1:20-CV-03076-FVS 2021 WL 1132224 at *6 (E.D. Wash. Feb. 5, 2021) (citing *Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. April 21, 2020)); *Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding

ORDER - 20

On remand, the ALJ is instructed to reconsider Ms. Witte's opinions and incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject these opinions.

### 2. State Agency Consultants Dr. Fitterer and Dr. Wolfe

Dr. Fitterer reviewed the record on September 28, 2018 and opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; she could stand and or/walk for a total of about six hours in an eight hour workday and sit for a total of about six hours in an eight hour workday; she could frequently climb ramps or stairs, occasionally climb ladders, ropes or scaffolds, frequently stoop and occasionally kneel, crouch, and crawl.  Tr. 84-85, 100-01.  Dr. Wolfe reviewed the record on November 28, 2018 and adopted Dr. Fitterer's initial

—————————————

Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec.*, No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute.").  All records indicate Plaintiff's migraines are a chronic condition.  *See, e.g.,* Tr. 528-29, 976, 1175, 1484, 1491, 1493.

ORDER - 21

opinion regarding Plaintiff's physical residual physical capacity.  Tr. 118-19, 136-37.  The ALJ found both opinions to be persuasive because they were "consistent with the overall objective medical evidence." Tr. 26.

Plaintiff argues the ALJ erred in crediting the prior administrative medical findings over the treating source Ms. Witte.  ECF No. 16 at 17-18.  The ALJ credited the opinions of Dr. Fitterer and Dr. Wolfe because the ALJ found them to be consistent with the overall objective medical evidence.  Tr. 26.  However, as discussed throughout this order, the ALJ's characterization of the record is impermissibly selective and not supported by substantial evidence.  In light of the ALJ's errors in evaluating the record as a whole, the ALJ's consideration of the reviewing source opinions is similarly not supported by substantial evidence.

Overall, the ALJ's evaluation of the medical opinion evidence is not supported by substantial evidence.  Along with reconsidering Ms. Witte's medical opinions, the ALJ is instructed to reconsider the opinions of Dr. Fitterer and Dr. Wolfe. The ALJ is also instructed to call a medical expert at the hearing to obtain an opinion regarding whether Plaintiff's impairments meet or equal a listing, and if not, an opinion regarding Plaintiff's RFC.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 16 at 18-23.  An ALJ

ORDER - 22

1    engages in a two-step analysis to determine whether to discount a claimant's

2    testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

3    "First, the ALJ must determine whether there is objective medical evidence of an

4    underlying impairment which could reasonably be expected to produce the pain or

5    other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

6    "The claimant is not required to show that [the claimant's] impairment could

7    reasonably be expected to cause the severity of the symptom [the claimant] has

8    alleged; [the claimant] need only show that it could reasonably have caused some

9    degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

10       Second, "[i]f the claimant meets the first test and there is no evidence of

11   malingering, the ALJ can only reject the claimant's testimony about the severity of

12   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

13   rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

14   omitted).  General findings are insufficient; rather, the ALJ must identify what

15   symptom claims are being discounted and what evidence undermines these claims.

16   *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas*, 278 F.3d

17   at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's

18   symptom claims)).  "The clear and convincing [evidence] standard is the most

19   demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

20

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 21.

1    The ALJ's evaluation of Plaintiff's symptom claims and the resulting

2  limitations largely relies on the ALJ's assessment of the medical evidence.  Having

3  determined a remand is necessary to readdress Ms. Witte's medical source

4  opinions, any reevaluation must necessarily entail a reassessment of Plaintiff's

5  subjective symptom claims.  Thus, the Court need not reach this issue and on

6  remand the ALJ must also carefully reevaluate Plaintiff's symptom claims in the

7  context of the entire record.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

8  2012) ("Because we remand the case to the ALJ for the reasons stated, we decline

9  to reach [plaintiff's] alternative ground for remand.").

10    In addressing Plaintiff's subjective claims, however, the ALJ is instructed to

11  utilize Social Security Ruling 19-4p, Evaluating Cases Involving Primary

12  Headache Disorders, which was in effect at the time of the ALJ's decision and

13  provides guidance on how to evaluate primary headache disorders, including

14  migraines.  *See* SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019).  On more than one

15  occasion in the decision the ALJ concludes Plaintiff's headache symptoms are

16  inconsistent with objective medical evidence based almost solely on unremarkable

17  MRI findings.  Tr. 21, 22, 24, 25.  However, SSR 19-4p explains that physicians

18  may conduct imaging scans such as MRI to "rule out other possible causes of

19  headaches - such as a tumor - meaning that an unremarkable MRI is consistent

20  with a primary headache disorder diagnosis."  SSR 19-4p, 2019 WL 4169635, at

ORDER - 25

*4.  Such imaging is used to rule out other medical conditions, not measure the severity of headaches, and using lack of MRI findings as objective evidence to discredit Plaintiff's symptom complaints was an error by the ALJ.  Upon remand the ALJ shall reevaluate Plaintiff's symptom claims regarding headaches using the guidance of SSR 19-4p as appropriate along with the testimony of a medical expert.

### C. Remedy

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 16 at 18, 23-24.  "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison v. Colvin*, 759 F.3d 995, 1020

ORDER - 26

(9th Cir. 2014) (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, the Court finds further proceedings are necessary.  While Plaintiff urges remand for immediate benefits based on the rejection of medical opinions and Plaintiff's symptom claims, there is conflicting evidence, including non-disabling medical opinions, which require resolution of the conflicts.  As such, the case is remanded for proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1    1. The District Court Executive is directed to substitute Kilolo Kijakazi as

2 Defendant and update the docket sheet.

3    2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

4    3. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

5    4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

6 REVERSING and REMANDING the matter to the Commissioner of Social

7 Security for further proceedings consistent with this recommendation pursuant to

8 sentence four of 42 U.S.C. § 405(g).

9    The District Court Executive is directed to file this Order, provide copies to

10 counsel, and **CLOSE THE FILE.**

11    DATED September 21, 2021.

12                    _s/Mary K. Dimke_
                      MARY K. DIMKE
13          UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

ORDER - 28